746 So.2d 525 (1999)
Michael ANDERSON, Appellant,
v.
Cathy ANDERSON, Appellee.
No. 98-04452.
District Court of Appeal of Florida, Second District.
December 10, 1999.
Catherine M. Catlin of Catherine M. Catlin, P.A., Tampa, and Raymond T. Elligett, Jr. of Schropp, Buell & Elligett, P.A. Tampa, for Appellant.
Thomas D. Casper, Tampa, for Appellee.
CARLIN, JOHN S., Associate Judge.
Michael Anderson appeals a final judgment denying him relief after he filed a motion pursuant to Florida Family Law Rule of Procedure 12.540(b). The circuit court found that he had not proven fraud so as to entitle him to the requested relief. We agree that he was not entitled to the relief he sought based upon the evidence presented, and affirm. We also certify conflict with DeRico v. Wilson, 714 So.2d 623 (Fla. 5th DCA 1998).
The following evidence was adduced at the hearing before the general master. Michael and Cathy Anderson were married when Cathy was already pregnant. Cathy thought the baby was Michael's and had told him so. About a year and a half after their daughter was born, Cathy petitioned for dissolution. During the pendency of the dissolution proceedings, and sometime prior to the first hearing in this matter in June, 1996, Cathy's sister alerted Michael to the fact that Cathy, unbeknownst to him, had been married before and had a son from a relationship prior to that. When Michael, after the June hearing, confronted Cathy with this information, *526 he also asked her if their daughter was his. Cathy denied having been married before and also said he was the father of their child. She added that if he doubted her, he could "check it out," thus implying that he could have a paternity test done. Michael had secured a copy of the prior marriage certificate so he knew Cathy had been untruthful about the prior marriage. He did not question his own paternity further and the dissolution proceedings continued through another hearing in October, 1996; the final judgment was filed in December, 1996.
Soon thereafter, problems arose. Cathy allegedly interfered with Michael's court-ordered visitation. Michael then submitted himself and his daughter to DNA testing. The results excluded him as the biological father. At the end of May, 1997, Michael filed a motion, pursuant to Rule 12.540, for relief from the dissolution judgment and his duty to pay child support. An evidentiary hearing was held, at which Cathy continued to maintain that Michael was the father of their daughter.
The circuit court adopted the carefully reasoned recommendation of the general master, which noted that all the information which led Michael to suspect his paternity was known to him at the time of the June, 1996, hearing as well as at the time of the final hearing in October, 1996. Further, no information came to his attention after the final judgment was entered that he did not have before. Although Michael testified that he had no doubt that he was the biological father, even at the time he was obtaining the DNA testing, the general master concluded that some nagging suspicion obviously prompted him to obtain the DNA testing anyway. Because Michael had no information post-dissolution that he did not have pre-dissolution regarding what he viewed as his former wife's deceptions, the general master found Michael was barred from setting aside the final judgment based on fraud, mistake, inadvertence, or newly discovered evidence. The general master concluded that while the DNA test results were sufficient to form the basis for the Rule 12.540 motion, the testing results begged the question of whether Michael could legally challenge the presumption created by the final judgment. The general master excluded the DNA test results as evidence because Michael had failed first to prove a fraud perpetrated upon him by his former wife.
Based on his analysis of fraud and the evidence adduced at the hearing, the general master declined to follow the logic and holding of DeRico, basing his decision, instead, on Judge Harris's dissent in that case. We are constrained to remind the general master and circuit court that, in the absence of a contrary decision by this court or the supreme court, they are bound by the decisions of other district courts of appeal. See Chapman v. Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982). That said, we join them in their disagreement with the DeRico decision. This case is legally, and nearly factually,[1] indistinguishable from DeRico. We agree with Judge Harris's analysis of these same facts:
The trial court apparently applied the principle that a divorce decree which establishes the paternity of a child is a final determination of paternity and is res judicata in any future proceedings. An exception to this rule is when the father is misled into believing that he is the father, and therefore does not challenge paternity at the time of the divorce, because the wife fraudulently conceals the child's parentage. But, as indicated above, the trial court made a factual determination that such did not occur in this case. I would affirm.
DeRico, 714 So.2d at 626 (Harris, J., dissenting) (citations and footnotes omitted). *527 As in D.F. v. Dept. of Revenue, 736 So.2d 782 (Fla. 2d DCA 1999), we again certify conflict with DeRico.
Affirmed; conflict certified.
THREADGILL, A.C.J., and NORTHCUTT, J., Concur.
NOTES
[1] In DeRico, the former husband sought relief from the judgment more than two years after the dissolution was final and was granted it; Michael Anderson only waited less than six months to seek such relief and was denied it.